440 A.2d 529

**WESTINGHOUSE AIR BRAKE DIVISION,
American Standard, Inc.,**

**and**

**Union Switch and Signal Division, American Standard,
Inc., Appellants,**

v.

**UNITED ELECTRICAL, RADIO AND MACHINE WORKERS
OF AMERICA LOCAL 610; Daniel Marguriet, Business Agent;
Mike Carbo, President; Frank Colonello, Vice President;
Charles P. Brush, Assistant Chief Steward; individually and as
Trustees ad litem.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1981.

Filed Jan. 19, 1982.

Ralph T. DeStefano, Martin J. Saunders and Brian J. Dougherty, Pittsburgh, for appellants.

Michael Louik and Daniel M. Berger, Pittsburgh, for appellees.

Before SPAETH, MONTGOMERY and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from a decree in equity issued during a strike, providing that if the company employs "nonstriking persons to perform any of the jobs of the striking employees," two previously issued consent decrees enjoining mass picketing will be automatically dissolved. We find that in thus conditioning the continued effectiveness of the consent decrees, the chancellor abused his discretion. We therefore order the condition stricken, and reinstate the consent decrees.

On October 31, 1981, the collective bargaining agreement between appellant company and appellee union expired, and on November 1 an economic strike began. On November 2 the company filed verified complaints in the lower court seeking injunctive relief from the union's mass picketing at the company's Swissvale and Wilmerding plants. Two consent decrees issued, specifying how many persons could picket, and at what gates. The decrees were identical except that one applied to the Swissvale, the other to the

Wilmerding, plant. With allowance for specific references to one of the two plants, each decree reads as follows:

## DECREE

AND NOW, to wit, this 2nd day of November, 1981, it is hereby ORDERED:

1. That a preliminary injunction is granted, restraining Defendants, their officers, agents, servants, representatives and employees, individually and collectively, and all persons acting in concert with them or on their behalf from doing any of the following acts:

a. Preventing or attempting to prevent by any species of intimidation, threats, force, coercion, obstruction or turning aside against his will, any of Plaintiff's agents, employees, representatives, and others having business with said Plaintiff, from entering, leaving, and transacting business at Plaintiff's Swissvale plant in Allegheny County;

b. Picketing, other than peacefully, and unlawfully interfering with the ingress or egress at the Plaintiff's Swissvale plant in Allegheny County;

c. In any manner conspiring, combining, agreeing and arranging with each other, or with any other person or persons, organizations or association, to unlawfully interfere with or hinder Plaintiff in the conduct of its lawful operations or to interfere with, hinder or annoy any employee or other person having lawful business who may desire to enter or leave said Swissvale plant in Allegheny County of the Plaintiff by force or displays of force or numbers, or by any conduct which tends to deprive any such employee or other person of the free enjoyment of his legal rights of access to or from the Plaintiff's Swissvale plant in Allegheny County;

d. In any manner performing any of the acts aforesaid so as to induce others to fail to provide or to assist in providing goods, services, transportation and supplies to said Swissvale plant in Allegheny County.

2. That if Defendant United Electrical, Radio and Machine Workers of America Local 610, Daniel Marguriet, Mike Carbo, Frank Colonello, Charles P. Brush or any other person acting in concert with them shall choose to picket, no more than [specifying how many persons could picket and at what gates].

3. All pickets shall conduct themselves in such manner so as not to block the use of said entrances for ingress to and egress from the Plaintiff's property by any party desiring to enter or leave the same.

4. Approved bond in the amount of $1,000.00 must be filed with the Court.

5. This preliminary or special injunction is to continue until the hearing on permanent injunction or until further Order of Court.

6. The Sheriff of Allegheny County is hereby directed to make known the contents of this Order to the pickets at the Plaintiff's Swissvale plant in Allegheny County.

7. Plaintiff's authorized representatives are hereby empowered to serve copies of this Order and other papers in this action upon such persons as Plaintiff may designate.

8. The employer and its agents and employees shall be enjoined from any and all acts or threats of violence, intimidation, coercion, molestation, libel or slander against the defendants engaged in this labor dispute.

The union membership did not readily comply with these decrees, and on November 4 the company sought and received a writ of assistance dispatching the sheriff to enforce the decrees. Order was restored for approximately two weeks. The company then began to use nonstriking persons to perform the work of the strikers. On November 18 mass picketing resumed at both plants. Ingress and egress were again obstructed, and there were scattered incidents of violence and vandalism.

On November 19 the union petitioned the lower court to "vacate [the consent decrees issued November 2], or, in the alternative, amend said [decrees] so as to provide that the

injunction shall remain in effect only so long as [the company] shall not employ persons, or transfer employees to perform the duties of those now or hereafter working because of the labor dispute." In support of this petition the union contended that the consent decrees did not comply with Section 13 of the Labor Anti-Injunction Act, Act of June 2, 1937, P.L. 1198, 43 P.S. § 206m, which provides:

No court of this Commonwealth shall have jurisdiction or power in any case involving or growing out of a labor dispute to issue a temporary restraining order or temporary injunction where employes are defendants, or the employer, either in anticipation of, or at or subsequent to the inception of, a labor dispute, has employed persons or assigned other employes to perform the duties of employes then or subsequently not working because of the labor dispute, unless, prior to the granting of such restraining order or temporary injunction, the said employer has discharged such persons and reassigned the other employes back to their former duties, and such facts shall be averred under oath in the application for the temporary restraining order or temporary injunction, and no temporary restraining order or temporary injunction shall issue unless it contains the following provision:

"This order (or injunction) shall remain in effect only so long as _____ (name of employer) shall not employ persons, or transfer employes to perform the duties of those now or hereafter not working because of the labor dispute." 1937, June 2, P.L. 1198, § 13.

The chancellor held the union's petition under advisement pending consideration of the parties' briefs and arguments.

Meanwhile, the company initiated a contempt proceeding against the union and some of its members for violating the consent decrees. After a hearing on November 20, the chancellor found the union in contempt and imposed a fine of $10,000. The fine was suspended pending the decision on the union's petition to vacate the consent decrees and on condition that the union and its members commit no further violation of the decrees and that a certain four of the union's members be kept from the picket lines.

On December 3 the chancellor filed an order quashing the union's petition to vacate the consent decrees. In the opinion accompanying the order the chancellor reasoned that the consent decrees had the full force and effect of a final decree, see *Zampetti v. Cavanaugh*, 406 Pa. 259, 176 A.2d 906 (1973), and that in the absence of any allegation of fraud or mutual mistake, the union's petition was an impermissible collateral attack on a final decree. *See e.g., International Organization of Masters, Mates & Pilots of America v. International Organization of Masters, Mates and Pilots, Inc.*, 456 Pa. 436, 318 A.2d 918 (1974); *Baran v. Baran*, 166 Pa.Superior Ct. 532, 537, 72 A.2d 623, 625 (1950). The union has not challenged the correctness of this decision.[1]

In addition to quashing the union's petition to vacate the consent decrees, the chancellor's order of December 3 did two other things. First, in paragraphs (2) and (3) of the order, the chancellor found the union in contempt and imposed a fine of $10,000, suspending the fine, however, on the conditions that we have mentioned above. Second, in paragraph (4) of the order, the chancellor stated:

(4) The Decree of November 2, 1981 [the consent decrees] shall automatically dissolve and be of no force and effect immediately upon the occurrence of the use by Plaintiff [the company] of nonstriking persons to perform any of the jobs of the striking employees.

By this appeal the company challenges paragraph (4) of the chancellor's order.

It will be observed that by paragraph (4) of his order the chancellor, while quashing the union's petition to vacate the consent decrees, gave the union in effect the same relief it

1. The company has challenged the union's contention before the chancellor that the consent decrees did not comply with Section 13 of the Labor Anti-Injunction Act, *supra*, 43 P.S. § 206m. In the company's view the controlling section is Section 4, as amended, 43 P.S. § 206d, which provides that the Act shall not apply "[w]here in the course of a labor dispute . . . representatives of a labor organization . . . seize, hold, damage, or destroy the plant . . . or other property of the employer with the intention of compelling the employer to accede to any demands . . . ." We need not decide this issue. *But see* cases cited p. 534, *infra*.

had sought by the petition. The chancellor explained this result in the opinion accompanying his order as follows. In his fourth conclusion of law he said:

(4) The use of non-qualified, nonstriking persons to perform the work of striking employees constitutes an unwarranted intimidation of the striking employees by the employer and, therefore, a violation of the [Consent] Decree.

Slip op. at 8.

In his Discussion, immediately following this conclusion, he said:

Clearly, the employer has a federally protected right to continue business operations during a labor dispute and this Court will do nothing to enjoin those rights. However, the employer has sought equitable relief under recognized maxims of equity and submits himself to the conscience of the Court. He who seeks equity must do equity. The intimidation of striking employees by filling their jobs with non-qualified, non-striking employees must shock the conscience of the Court and form the basis of denying equitable relief. If the employer chooses to exercise his federally protected right to continue business operations in such a manner as to cause exceptional hardship and agitation among its striking employers, it must then also accept the consequences of such conduct. This Court will not interfere except to prevent violence and harm to persons and damage to property. Therefore, so long as Plaintiff [the company] complies with the terms of the [Consent] Decree, this Court will enforce the same against the Defendants.

*Id.* at 8–9.

We cannot accept this reasoning. It is true that paragraph 8 of the consent decrees enjoin the company from "intimidation . . . against the defendants engaged in this labor dispute." But we can find no basis for the chancellor's conclusion that the company violated the decrees by engaging in such intimidation.

The chancellor does not say why he concluded that the company's act of hiring nonstriking persons constituted "intimidation" of the union in violation of paragraph 8 of the consent decrees. In the absence of an explanation by the chancellor, the union has offered one. It urges us to look to the dictionary definition of "intimidate" and find "intimidation" because it and its members were "placed in fear" by the company's actions. This "fear," it is said, was: "that the products performed by nonqualified, nonstriking persons would be unsafe and dangerous to the public ... [;] that the production of defective equipment would eventually cause the loss of customers, the decline of business and the subsequent loss of employment ... [;] that the Company, by continuing to produce, would irreparably harm the Union's bargaining power and negate any prospect of a fair resolution to the labor dispute. Indeed, this fear mushroomed into outrage." Brief for Appellees at 9.

We may assume that the company's use of nonstriking persons did produce "fear" and "outrage," and, in some sense of the word, "intimidation" of the union and its members. But it does not follow that there was any "intimidation" in violation of the consent decrees.

 When interpreting a consent decree, or any other agreement, words must be read in context. The decree must be read as a whole, each of its provisions being interpreted together with its other provisions. *See generally,* Restatement (Second) Contracts § 202; Restatement (First) Contracts § 235. Here, the provision that the company is enjoined from "intimidation" of the union does not exist in isolation. It is preceded by a series of provisions directed against action by the union and its members. For example:

> Preventing or attempting to prevent by any species of intimidation, threats, force, coercion, obstruction or turning aside against his will, *any of [the company's] agents, employees, representatives, and others having business at [the Swissvale and Wilmerding plants]*.

> In any manner conspiring, combining, agreeing and arranging with each other or with any other person or

persons, organizations or associations, to unlawfully inter-fere with or hinder [the company] in the conduct of its *lawful* operations or to interfere with or hinder or annoy *any employee or other person having lawful business who may desire to enter or leave [the Swissvale and Wilmerding plants]* by force or displays of force or numbers, or by any conduct which tends to deprive any such employee or other person of *the free enjoyment of his legal rights* of access to or from the [plants].

Consent Decrees of November 2, 1981, Paras. 1(a) & (c) (emphasis added).

■ Thus, in language specific and clear, the decrees pro-hibit the union and its members from interfering with the company's right to carry on its business in a *lawful* manner during the course of strike. The chancellor in his opinion concedes that the company "has a federally protected right to continue business operations during a labor dispute." Slip op. at 8. And the union concedes that "a body of Federal *case* law has developed which enables employers to replace employees who are on strike." Brief for Appellees at 14 (emphasis in original). These concessions are neces-sary. *See Machinists v. Wisconsin Employment Relations Commission,* 427 U.S. 132, 153, 96 S.Ct. 2548, 2559, 49 L.Ed.2d 396, 411 (1976); *NLRB v. Mackay Radio and Tele-graph Co.,* 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1937). With them, the chancellor's order must fall. For it cannot be maintained that a company exercising "a federally pro-tected right"—whether the right is protected by statute or case law—has engaged in "intimidation" of the union.

We think it evident that the consent decrees attempted to provide both parties with injunctive relief against any at-tempt by the other party to engage in *un*lawful conduct. The company was to be protected against the union interfer-ing with its lawful business operations. The union and its members were to be protected against any attempt by the company to interfere with the right to strike. What the chancellor's order comes down to is a statement that if the company exercises its federally protected right to employ

nonstriking persons, the union will not be enjoined from mass picketing—the consent decrees enjoining mass picketing "shall automatically dissolve." This was a clear abuse of discretion. The company was entitled to protection against mass picketing. The chancellor's statement that he would not interfere with mass picketing "except to prevent violence and harm to persons and damage to property," slip op. at 9, is not to the point. Mass picketing, with or without violence or damage to property, constitutes a seizure of the employer's plant, and as such, is unlawful. *See Wortex Mills, Inc. v. Textile Workers Union of America*, 369 Pa. 359, 85 A.2d 851 (1952) (mass picketing enjoined although "peaceful" and with "no acts of violence"); *Westinghouse Electric Corp. v. United Electrical Radio & Machine Workers*, 353 Pa. 446, 46 A.2d 16 (1946) (mass picketing enjoined "not because of any destruction of, or injury to, [the] plants, but because of the interruption of vital activities by way of preparations for future business and production"). Thus the chancellor said that if the company engaged in lawful conduct, he would leave it without recourse to protect itself against the union's unlawful conduct.

Paragraph (4) of the lower court's order of December 3, 1981, is vacated, and the consent decrees of November 2, 1981, are reinstated.

MONTGOMERY, J., files a concurring statement.

MONTGOMERY, Judge, concurring:

I agree with Judge Spaeth's basic conclusion that the chancellor abused his discretion in holding that the Plaintiff-Appellants' exercise of a federally protected right to employ replacements for strikers could not be considered to be "intimidation" violative of the injunctive consent decrees. I believe it is important to note that the Appellees did not argue in this case that the lower court's order precluding the Appellants' use of replacement employees was justified solely on the basis of Section 13 of the Pennsylvania Labor Anti-Injunction Act, Act of June 2, 1937, P.L. 1198, 43 P.S. § 206m, which is recited in full in the Majority Opinion.

The Act, which sets forth limitations upon the power of our Commonwealth's courts to issue injunctions in labor disputes, is inapplicable in the circumstances of a plant seizure. See Section 4, 43 P.S. § 206d, set forth in pertinent part at footnote 1 of the Majority Opinion. Mass picketing, which the parties apparently agree occurred during the strike in issue in this case, has been equated with a plant seizure [See the discussion in *Westinghouse Electric Corp. v. United Electrical, Radio & Machine Workers of America*, 353 Pa. 446, 46 A.2d 16, 163 A.L.R. 656 (1946) ], and thus the protections of Section 13 are not available to the Appellees in this case.