IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael Kenney, Pharm.D., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 10 C.D. 2018 |
| | : | Argued: November 13, 2018 |
| Bureau of Professional and Occupational | : | |
| Affairs, State Board of Pharmacy, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: February 8, 2019

       Michael Kenney, Pharm.D. (Kenney), petitions for review of an adjudication of the Bureau of Professional and Occupational Affairs, State Board of Pharmacy (Pharmacy Board), denying his petition to lift the restriction on his pharmacy license and end his probation. Kenney argues that the Pharmacy Board erred and abused its discretion in denying his petition because he presented uncontroverted evidence that he has successfully completed his treatment programs; has fully satisfied the terms of his probation; and is ready to resume his profession as a fully-licensed pharmacist. For the reasons that follow, we vacate the Board's order and remand this matter to the Board for further proceedings consistent with this opinion.

## Background

       In 2014, Kenney applied for a license to practice as a pharmacist in Pennsylvania. In the application, he informed the Pharmacy Board that he was a licensed pharmacist in the State of Florida and that he was enrolled in the Florida

Professional Resource Network, referred to as the impaired practitioner program,[1] as a consequence of his 2008 arrest for driving under the influence of alcohol.

On September 16, 2014, Kenney entered into a voluntary consent agreement (Voluntary Agreement) with the Pennsylvania Bureau of Professional and Occupational Affairs (Bureau). The Voluntary Agreement provided that the Pharmacy Board would issue Kenney a pharmacy license; suspend the license for three years; and stay the suspension in favor of probation for three years, *i.e.,* until September 16, 2017. Voluntary Agreement, 9/16/2014, at 4, ¶7.e; R.R. 8. During the period of probation, Kenney was required to abstain from consuming alcohol and undergo a mental health evaluation, drug treatment and random drug testing. The probation included monitoring by the Voluntary Recovery Program, which is a part of the Pharmacy Board's Professional Health Monitoring Program (PHMP).[2] On November 18, 2014, the Pharmacy Board issued Kenney a pharmacy license in accordance with the terms of the Voluntary Agreement.

On December 10, 2015, Kenney settled an administrative complaint with the Florida Board of Pharmacy that was prompted by Kenney's failure to comply with Florida's impaired practitioner program. Kenney agreed to a suspension of his Florida license, until he appeared before the Florida Board of Pharmacy and demonstrated that he could safely practice pharmacy. Following reinstatement of his license, Kenney agreed to have his license placed on probation for two years and comply with certain conditions.

---

[1] The Florida impaired practitioner program monitors the evaluation, care, and treatment of healthcare professionals impaired by drug or alcohol use. Florida Administrative Complaint at 2, ¶7; Reproduced Record at 73 (R.R. __).

[2] The PHMP assists licensed professionals who are suffering from a mental or physical disorder to receive treatment and monitoring so that they can safely practice. The PHMP operates two programs: the Voluntary Recovery Program and the Disciplinary Monitoring Unit.

In response to Florida's administrative complaint, the Pharmacy Board initiated its own administrative enforcement action against Kenney, which was resolved with a Consent Order dated December 15, 2015. The Consent Order acknowledged that on May 9, 2014, Kenney voluntarily enrolled in a program operated by the Secundum Artem Reaching Pharmacists with Help (SARPH) that is approved by the Pharmacy Board. Since November 2014, Kenney has been monitored by the Pharmacy's Board's PHMP. The Consent Order suspended Kenney's license for three years and stayed the suspension in favor of three years of probation. During probation, Kenney agreed to continue to comply with the monitoring set forth in the Voluntary Agreement.

In May 2017, Kenney requested a release from continued monitoring and a full reinstatement of his license.[3] On July 11, 2017, the Pharmacy Board held a hearing on Kenney's request that was conducted by the Pharmacy Board's counsel.

At the hearing, Kenney testified about his work as a pharmacist in Florida and Pennsylvania. Although Kenney was arrested in 2008 for driving under the influence of alcohol, he has never been impaired while working as pharmacist.

Kenney testified that in 2011, he entered into a five-year monitoring contract with the Florida impaired practitioner program. He had completed two years when the pharmacy where he had been working closed. Kenney decided to relocate to Costa Rica. Prior to departing, he executed the documents necessary to withdraw from the practice of pharmacy in Florida.

In November 2013, he returned to Philadelphia, Pennsylvania in order to care for his ailing father. Two months later, Kenney contacted the Florida impaired practitioner program and learned that he had violated the program by not

_____

[3] The Bureau did not file a response to Kenney's petition.

3

reporting his return to the United States within two days of his arrival. In December of 2015, he resolved this matter with the Florida Board of Pharmacy by placing his Florida license on probation. It has since been reinstated.

On May 9, 2014, Kenney voluntarily entered into the 36-month contract with SARPH. The program required him to check in daily; attend three recovery meetings every week; and pass random and observed drug tests. He has successfully completed this program. His last Board-approved psychiatric evaluation was favorable, stating that: "alcohol dependence in extended full remission, no indication for use of any psychotropic medications, no indication for specific treatment for any history of addiction problems and fit to practice pharmacy with the reasonable skill and satiety." Notes of Testimony, 7/11/2017, at 22 (N.T. __); R.R. 111.

Kenney testified that since enrolling in the SARPH program, he has paid more than $7,000 for Pharmacy Board costs; $2,400 for the required psychiatric evaluations; and over $10,000 for the drug screening tests. In the meantime, he has been working at a lower-paying pharmacy job because of his probation. Since 2011, he has attended over 800 recovery meetings and passed 140 random drug tests. Kenney asked the Pharmacy Board to reinstate his license for the following reasons:

> I pose no threat to the health or safety of the public. I passed every drug screen, and I've attended every meeting, paid every fine and disclosed to every employer the embarrassment of my DUI's monitoring requirements.
>
> I have matured a great deal since my last drink five and a half years ago, working the steps, having a sponsor, participating in weekly recovery meetings, and adhering to the monitoring program guidelines over this length of time will indeed impart a great deal of wisdom strength and serenity to those who allow the spirit to guide them.
>
> I am so eager to put this part of my life behind me with a new chapter of my life. I[,] therefore, humbly request, based on the

4

extensive results of my monitored recovery, medical evaluations and length of time since the DUI offense that the Board considered [sic] dismissing my consent agreement at this time….

N.T. 23-24; R.R. 112-13.

On behalf of Kenney, Kathie Simpson, Executive Director of the SARPH program, testified.[4] She confirmed that Kenney has fully complied with the program. Kenney has passed 84 drug tests; maintained contact with his sponsor; actively participated in the 12-step meetings; and provided reports verifying his attendance. Simpson testified that Kenney has been working at a pharmacy since June 2015 and that his employer reports exemplary performance on quarterly written reports. Kenney has been free of any psychoactive substances and alcohol since October 2011. Simpson opined that Kenney had "demonstrated rehabilitation." N.T. 14; R.R. 103.

In addition to her testimony, on July 10, 2017, Simpson submitted a letter supporting Kenney's request to be released from his probation. In her four-page letter, Simpson detailed all that Kenney had done to comply with all SARPH and PHMP monitoring over the course of many years. She described Kenney "as a model participant in our program" and "an asset to the pharmacy profession." R.R. 88. Her letter stated that, "[w]e believe that he has demonstrated rehabilitation to the extent that the likelihood" of a future violation is minimal. *Id.*

At the hearing, Simpson stood by her support for Kenney but acknowledged an error in her letter. Specifically, the penultimate paragraph of her letter stated that the Bureau's Prosecution Division joined her in not opposing the restoration of Kenney's unrestricted license as of September 16, 2017, when his

---

[4] Simpson stated that her program works "in conjunction with the [PHMP] if clients receive a consent agreement or a [Pharmacy] Board order, but we also monitor participants who reach out to [SARPH] on their own[.]" N.T. 9; R.R. 98.

5

monitoring under his Voluntary Agreement ended by its own terms. At the hearing, Simpson requested that this sentence in the letter be deleted because the PHMP opposed an early termination of Kenney's probation. The Pharmacy Board accepted Simpson's letter, as revised.

On behalf of the Bureau, Kevin Knipe, manager of the PHMP, testified. Knipe confirmed that Kenney had fully participated in the monitoring required by his probation, which was to end on December 15, 2018, under the Consent Order. Knipe testified that the PHMP did not support early termination of probation, for Kenney or for any pharmacist.

On December 5, 2017, the Pharmacy Board denied Kenney's petition. The Pharmacy Board explained that Kenney had not obtained the written concurrence of the Prosecution Division; had not submitted his petition on the PHMP form; and had not been on probation for at least three years as required by the Consent Order.

## Appeal

On appeal,[5] Kenney raises three issues.[6] First, he argues that the Pharmacy Board erred and abused its discretion in denying his petition to terminate his probation because the Consent Order did not make the three-year probation an absolute requirement. Second, he argues that the Pharmacy Board erred and abused its discretion in denying his petition for the stated reasons that Kenney failed to

---

[5] This Court's review determines whether the Pharmacy Board abused its discretion, committed an error of law, or violated constitutional rights. *DePanfilis v. State Board of Pharmacy*, 551 A.2d 344, 345 (Pa. Cmwlth. 1988).

[6] In his brief, Kenney raises four issues on appeal. However, for purposes of this opinion, we have combined and rearranged the order of Kenney's issues.

6

submit his petition on the correct form and obtain the approval of the Bureau's Prosecution Division. Third, Kenney argues that the Pharmacy Board capriciously disregarded his unrebutted and overwhelming evidence of rehabilitation and sobriety.[7]

### Licensing of Pharmacists

We begin with a review of the applicable law. The practice of pharmacy is a regulated profession in the Commonwealth of Pennsylvania, and the terms of this regulatory regime are set forth in the Pharmacy Act.[8] The Pharmacy Act requires all persons practicing in the pharmacy profession to be licensed, and it establishes the standards that a pharmacist must meet in order to be licensed. *See* Section 3 of the Pharmacy Act, 63 P.S. §390-3. The standards require, *inter alia*, that the licensee hold a degree in pharmacy, complete an internship, pass an examination administered by the Pharmacy Board, be of good moral and professional character and be fit to practice pharmacy.[9] Section 3(a) of the Pharmacy Act, 63 P.S. §390-3(a).

To enforce the terms of the Pharmacy Act, the General Assembly has created the Pharmacy Board to review applications for licensure, investigate alleged

---

[7] The expiration of Kenney's three-year term of probation on December 15, 2018, does not render his appeal moot because the probation does not terminate automatically. Under the Consent Order, he must petition the Board to have his license restored without restriction even after his probation ends.

[8] Act of September 27, 1961, P.L. 1700, *as amended*, 63 P.S. §§390-1 – 390-13.

[9] The Board may issue a license to practice pharmacy to a person already licensed as a pharmacist in another state without examination, so long as that person produces satisfactory evidence of having

> had the required secondary and professional education and training, including internship, and is possessed of good character and morals as required of applicants for licensure under the provisions of [the Pharmacy Act.]

Section 3(g) of the Pharmacy Act, 63 P.S. §390-3(g).

violations of the Pharmacy Act and initiate enforcement actions. Section 6(k) of the Pharmacy Act, 63 P.S. §390-6(k). In this way, the Pharmacy Board maintains discipline in the profession.

Under Section 5(a) of the Pharmacy Act, 63 P.S. §390-5(a), the Pharmacy Board is authorized to revoke or suspend a license if the pharmacist violates the licensing standards. For example, the Pharmacy Board can suspend or revoke a pharmacist's license if he becomes unfit to practice pharmacy; procured his license through fraud or misrepresentation; violated any provision of the Pharmacy Act; or had a license to practice pharmacy suspended or revoked in another state. Section 5(a) of the Pharmacy Act, 63 P.S. §390-5(a). A license suspension or revocation entitles the pharmacist to a full evidentiary hearing conducted in accordance with the Administrative Agency Law, 2 Pa. C.S. §§501-508, 701-704. In place of a hearing, a charge of misconduct can be resolved in a consent order.

A consent order has the same effect as an adjudication issued in accordance with the Administrative Agency Law. Professor of Law Charles H. Koch, Jr. explains that

> [a] consent order is an agreement reached in an administrative proceeding between the parties one of which is usually the agency's litigation staff. The agreement is then presented to the agency head…. [If the agency head accepts the agreement,] it issues an order much as a court issues a consent decree…. A [consent] order will have the same effect as an order issued after an administrative adjudication.

Charles H. Koch, Jr., ADMINISTRATIVE LAW AND PRACTICE, *Settlement*, §5:43, at 160 (3d ed. 2010). A consent order "is in essence a contract binding the parties thereto." *Cecil Township v. Klements*, 821 A.2d 670, 674 (Pa. Cmwlth. 2003) (quoting *Commonwealth v. United States Steel Corporation*, 325 A.2d 324, 328 (Pa.

8

Cmwlth. 1974)). This Court will construe or interpret a consent order as it would a contract. *See generally Cecil Township*, 821 A.2d at 674. This Court will read the consent order as a whole and interpret each of the provisions together with the other provisions. *Westinghouse Air Brake Division v. United Electrical, Radio and Machine Workers of America Local 610*, 440 A.2d 529, 533 (Pa. Super. 1982).

With these principles in mind, we consider Kenney's arguments that the Pharmacy Board erred and abused its discretion in denying his petition to end his probation.

## Modification of Probation Period

In his first issue, Kenney argues that the Pharmacy Board abused its discretion by treating the three-year probation as an absolute requirement when, in fact, it has the discretion to modify his term of probation and has ample reasons to do so in Kenney's case. Kenney's probation period was extended under the Consent Order solely because of the Florida disciplinary matter that, in turn, was related to his delay in contacting the Florida impaired practitioner program upon his return to the United States. Florida's action had nothing to do with alcohol abuse. Ironically, the Florida matter has been resolved, and his Florida probation has ended. Since May 2014, when Kenney voluntarily agreed to participate in the SARPH program, he has fully complied with all monitoring requirements.

The Bureau argues that the Consent Order required Kenney to secure the consent of the Prosecution Division and the PHMP to seek an early termination of his probation. Because he did not secure these approvals, the Pharmacy Board's decision appropriately declined to end his probation before December 15, 2018.

The Consent Order, which took effect on December 15, 2015, provided for a three-year probation. Paragraph 5.c states, in relevant part, as follows:

[Kenney's] license … shall be indefinitely SUSPENDED for no less than three (3) years, such suspension to be immediately STAYED in favor of no less than three (3) years of PROBATION, *unless that period of probation is extended or modified for cause by mutual agreement* of [Kenney] and the [PHMP], Disciplinary Monitoring Unit ("DMU") case manager….

Consent Order at 5, ¶5.c; R.R. 35 (emphasis added). Notably, Paragraph 5.c states that the three-year period of probation may be "extended or modified." *Id.* The word "modified" can only mean a reduction in the period of probation or else it is redundant of "extended." In rejecting Kenney's request, the Pharmacy Board failed to consider the language of Paragraph 5.c that expressly authorizes a modification of his probation.

Paragraph 5.c also states that the modification can be done by "mutual agreement" with the PHMP. The record established, however, that the PHMP has adopted a rigid policy to oppose all requests for early termination of probation in order to reduce its workload.[10] This policy suggests a lack of good faith and fair

---

[10] Knipe testified, in relevant part, as follows:

| [Attorney:] | And what is [the] PHMP's position with regard to the present Reinstatement Petition submitted by Mr. Kenney to the [Pharmacy] Board? |
| [Knipe:] | The PHMP does not support early termination. |
| [Attorney:] | … why is that [the] PHMP's position? |
| [Knipe:] | *The concern regarding the liability [the] PHMP may face* if we support early termination of someone's monitoring requirements, and *the possibility of having many more requests of this nature if such a policy*, [the] PHMP were ever to adopt early termination. |

N.T. 33; R.R. 122 (emphasis added). Knipe's stated concern for "liability" rings hollow given sovereign immunity. Although sovereign immunity has been waived in certain circumstances, it has not been waived for a mistake in judgment by PHMP. *See* 42 Pa. C.S. §8522 (exceptions to sovereign immunity). PHMP's real concern is having to review requests on their merits. If Knipe believes that early termination of monitoring requirements will not be well received in the court

10

dealing on the part of the Pharmacy Board in executing the Consent Order. At a minimum, the PHMP's position makes the promise of a modification set forth in Paragraph 5.c an illusory promise.

Further, the Pharmacy Act authorizes only the Pharmacy Board to place a licensee on probation and require a licensee to submit to treatment. *See* Section 5(c) of the Pharmacy Act, 63 P.S. §390-5(c).[11] Although the Pharmacy Board may employ consultants "to assist it for any purposes," it "may not delegate any of its final decision making responsibilities to any consultant." Section 6(k)(4) of the Pharmacy Act, 63 P.S. §390-6(k)(4). Contrary to this statutory directive, the Pharmacy Board delegated its authority to modify the term of Kenney's probation to the PHMP.

---

of public opinion, he should advise PHMP not to participate in consent agreements that authorize early termination of probation.

[11] It states:

When the board finds that the license of any pharmacist may be refused, revoked or suspended under the terms of subsection (a), the board may:

(1)    Deny the application for a license.

(2)    Administer a public reprimand.

(3)    Revoke, suspend, limit or otherwise restrict a license as determined by the board.

(4)    Require a licensee to submit to the care, counseling or treatment of a physician or a psychologist designated by the board.

(5)    Suspend enforcement of its finding thereof and place a licensee on probation with the right to vacate the probationary order for noncompliance.

(6)    Restore or reissue, in its discretion, a suspended license to practice pharmacy and impose any disciplinary or corrective measure which it might originally have imposed.

Section 5(c) of the Pharmacy Act, 63 P.S. §390-5(c).

11

In sum, the Consent Order permitted Kenney to petition for an early end to his probation, and he did not need the consent of the PHMP to file his petition. For these reasons, the Pharmacy Board erred and abused its discretion in denying Kenney's petition for early termination of his probation for the stated reason that he needed to have completed a minimum of at least three years of probation or obtained the approval of the PHMP.

**Use of the PHMP Form and Concurrence of Prosecution Division**

In his second issue, Kenney argues that the Pharmacy Board erred in denying his petition for the stated reason it was not presented on the form provided by the PHMP and was not agreed to by the Bureau's Prosecution Division. Kenney contends that neither condition was required by the Consent Order.

The Consent Order states, in pertinent part, as follows:

> [a]fter successful completion of the minimum period of probation, [Kenney] may petition the Board, *upon a form provided by the PHMP*, to reinstate [his] authorizations to practice the profession to unrestricted, non-probationary status upon an affirmative showing that [he] has complied with all terms and conditions of this Agreement and that [his] resumption of unsupervised practice does not present a threat to the public health and safety.

Consent Order at 22-23, ¶5.g; R.R. 52-53 (emphasis added). At the hearing, Knipe testified that the PHMP refused to provide a reinstatement form to Kenney because Kenney had not completed his minimum term of probation. It was this refusal that prevented Kenney from using the requisite form. This is circular reasoning.

Even so, the requirement of the PHMP form applies where the respondent has completed the period of probation stated in the Consent Order. It has no application here where Kenney seeks a modification to his probation period.

12

Further, the Consent Order does not prescribe the use of any particular form when seeking to modify the period of probation.

The Pharmacy Board interpreted Paragraph 9 of the Consent Order to require the consent of the Bureau before Kenney could seek to modify his term of probation. Paragraph 9 states, in pertinent part, as follows:

> [Kenney] agrees, as a condition of entering into this Agreement, not to seek modification of it at a later date without first obtaining the express written concurrence of the Prosecution Division of the Department of State.

Consent Order at 25, ¶9; R.R. 55. Paragraph 5.c of the Consent Order expressly permitted Kenney to seek a modification of his probation period. Paragraph 9 is irrelevant because Kenney seeks to modify his probation, not the Consent Order. Rather, he seeks to implement Paragraph 5.c of the Consent Order.

We conclude that Kenney did not need written concurrence from the Prosecution Division in order for the Board to consider his petition for early termination of probation. Further, Kenney did not need to submit his petition on a form provided by the PHMP. Accordingly, the Pharmacy Board erred and abused its discretion in denying Kenney's petition on these stated grounds.

### Capricious Disregard of Evidence

In his third issue, Kenney contends that the Pharmacy Board capriciously disregarded his evidence of sobriety, program compliance, and rehabilitation, none of which was rebutted in any fashion by the Bureau. The Bureau responds that the Pharmacy Board considered Kenney's evidence, but it has the discretion to deny a request for early release from probation and so exercised it.

A capricious disregard of evidence occurs "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of

13

ordinary intelligence could not possibly have avoided in reaching a result." *Bentley v. Bureau of Professional and Occupational Affairs, State Board of Cosmetology*, 179 A.3d 1196, 1200 (Pa. Cmwlth. 2018) (quoting *Station Square Gaming L.P. v. Pennsylvania Gaming Control Board*, 927 A.2d 232, 237 (Pa. 2007) (internal quotations omitted)). "Where there is strong critical evidence that contradicts contrary evidence, the adjudicator must provide an explanation as to how it made its determination." *Id.* In other words, "[t]he ultimate question is whether an adjudicator has failed to give a proper explanation of overwhelming critical evidence." *Balshy v. Pennsylvania State Police*, 988 A.2d 813, 836 (Pa. Cmwlth. 2010) (quoting *Grenell v. State Civil Service Commission*, 923 A.2d 533, 538 (Pa. Cmwlth. 2007)).

In the adjudication, the Pharmacy Board recited that it "considered the testimony of the witnesses and the documentary evidence[.]" Board Adjudication at 3; R.R. 3. It summarized Kenney's evidence as follows:

> [Kenney's] testimony indicated his full compliance with the recovery program in Pennsylvania. He testified regarding his disciplinary history in Florida, and that his license remains on probationary status in Florida. (However, after the hearing, [Kenney], through his newly-hired attorney, requested the [Pharmacy] Board to reopen the record to allow for submission of new documents from the Florida Board. This request was granted, and [Kenney] submitted documents including a Florida Board order terminating [his] Florida probation effective October 5, 2017[].)

Board Adjudication at 2; R.R. 2. The Pharmacy Board stated that Simpson provided Kenney's "recovery history and indicated that he was in full compliance with the SARPH program[,]" but Knipe "recommended denial" of Kenney's petition. *Id.* On

14

these bases, the Pharmacy Board concluded that "the record [did] not support granting the [p]etition for early release…." *Id*. at 3; R.R. 3.

Absent from the Pharmacy Board's adjudication, however, is any discussion of the length of Kenney's time in various treatment programs, the number of therapy sessions he attended, the number of drug screenings he passed, or the significant, out-of-pocket costs he has incurred for participation in the programs. Additionally, the Pharmacy Board made no comment on his employment history as a pharmacist or his exemplary performance evaluations from his current employer.

It is uncontradicted that Kenney complied with the requirements of the SARPH program and has been in a treatment program for more than three years. Kenney offered considerable evidence about his treatment and employment. The Bureau did not offer an iota of evidence that Kenney needed to remain in the SARPH program a minute longer. The Pharmacy Board did not discredit Kenney's testimony in any way. Simply, the Pharmacy Board ignored this critical evidence without comment in refusing to modify Kenney's period of probation. We agree that the Pharmacy Board has capriciously disregarded competent and relevant evidence.

Moreover, in its adjudication, the Pharmacy Board mischaracterized Simpson's testimony as not making a recommendation. *See* Board Adjudication at 2; R.R. 2. At the hearing, Simpson opined that Kenney had "demonstrated rehabilitation." N.T. 14; R.R. 103. Further, in her letter to the Pharmacy Board's counsel, Simpson stated:

> Thank you for considering [Kenney] for early completion of his DMU Consent Agreement and Order. [Kenney] will have 36 months of documented, verified abstinence with the [SARPH] program on July 25, 2014 (the date of his first screen). **We believe he has demonstrated rehabilitation to the extent that**

15

**the likelihood of him violating the Practice Act or Law in the future is minimal. We believe he has demonstrated that he is an asset to the Pharmacy profession**.

R.R. 88 (emphasis in original). Simpson's testimony and the content of her letter cannot be reconciled with the Pharmacy Board's statement that Simpson did not make a recommendation.

At the hearing, Simpson explained that, in her initial correspondence to the Pharmacy Board's counsel in May 2017, she recommended that Kenney's license be restored to unrestricted status as of September 16, 2017. On the eve of the hearing, Simpson updated her letter to reflect additional drug screening tests that Kenney passed as well as the most recent report received from his employer. Then, at the hearing, Simpson stated that she was not "providing any recommendation" and requested deletion of the penultimate sentence in her letter. N.T. 14; R.R. 103. Simpson explained that she did so in order to be consistent with the PHMP. Stated otherwise, Simpson's decision related to her working relationship with the PHMP and not to the merits of her belief that Kenney is rehabilitated and able to practice pharmacy. We reject the Pharmacy Board's characterization of Simpson's testimony.

The Board erred in relying on Knipe's testimony because it was based upon the PHMP's inflexible policy, not Kenney's record, and a mischaracterization of the import of Simpson's testimony. At the same time, the Board made no comment on the extensive evidence to support Kenney's full license restoration, which constituted capricious disregard of evidence.

## Conclusion

The Pharmacy Board erred and abused its discretion in denying Kenney's petition to end his probation for the stated reasons that Kenney had not

been on probation for at least three years; lacked written concurrence from the Prosecution Division; and failed to use the PHMP form. The Board capriciously disregarded Kenney's evidence of rehabilitation, program compliance, and exemplary employment record. Accordingly, we vacate the Pharmacy Board's adjudication and remand the matter for an expeditious review on the current record of Kenney's petition to end probation. In doing so, the Pharmacy Board shall consider Kenney's uncontroverted evidence of rehabilitation, program compliance and exemplary employment, and issue a determination on his authorization to practice the profession in an unrestricted, non-probationary status.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Kenney, Pharm.D.,       :
                Petitioner    :
                                  :
           v.              :   No. 10 C.D. 2018
                                  :
Bureau of Professional and Occupational  :
Affairs, State Board of Pharmacy,     :
               Respondent   :

# **O R D E R**

AND NOW this 8th day of February, 2019, the order of the Bureau of Professional and Occupational Affairs, State Board of Pharmacy (Pharmacy Board), dated December 5, 2017, is VACATED, and the matter is REMANDED to the Pharmacy Board for further proceedings consistent with the attached opinion. The Pharmacy Board shall issue the determination within 30 days of the next meeting of the Pharmacy Board.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge