IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,                      :
                    Appellant            :
                                         :
        v.                               : No. 1 C.D. 2019
                                         : ARGUED:  February 11, 2020
Jaz'Mine Henderson                       :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED:  April 20, 2020

The City of Pittsburgh (City) appeals from the November 27, 2018 order of the Court of Common Pleas of Allegheny County (trial court), affirming the decision of the City's Civil Service Commission (Commission) to reinstate Jaz'Mine Henderson (Henderson) as a clerical specialist with the City's Department of Human Resources (Department).  As the adjudication issued by the Commission precludes effective appellate review, we vacate the trial court's order and remand this matter for further proceedings.

## I.  Background

Henderson held a full-time position with the Department as a clerical specialist from December 27, 2016, through March 2, 2018.  Reproduced Record (R.R.) at 97a.  In a letter dated February 22, 2018, Janet Manuel (Manuel), the Department's Acting Director, notified Henderson she was suspended without pay for five days.  R.R. at 73a.  The Department based Henderson's suspension on a

report from the City's Office of Municipal Investigations (OMI), which alleged Henderson submitted falsified documents to the Pennsylvania Department of Human Services (DHS). *Id.* at 73a. These documents falsely stated Henderson's employment had terminated on two occasions in 2017; as a result, Henderson improperly received increased public assistance. *Id*. at 73a-74a. Henderson was given five work days to respond and state her reasons, in writing, why she should not be discharged. *Id.* at 73a. Failure to respond would result in Henderson's termination as of the close of business on February 28, 2018. *Id.*

In a subsequent letter dated March 2, 2018, the City's Mayor, William Peduto, notified Henderson she was discharged from her position with the Department.[1] *Id.* at 81a. Mayor Peduto indicated Henderson's response to the February 22, 2018 letter was unsatisfactory and provided no basis to call into question the conclusions drawn from OMI's investigation.[2] *Id.*

Henderson appealed her termination to the Commission, which held a hearing on March 29, 2018. The City presented the testimony of Manuel and Erin Bruni (Bruni), the manager of OMI, and introduced the OMI report. Henderson, who appeared *pro se*, testified on her own behalf.

---

[1] Henderson's dismissal was governed by Section 20 of the Act of May 23, 1907, P.L. 206, which provides, in pertinent part, that no employee in the classified civil service shall be discharged except for just cause. 53 P.S. § 23453. What constitutes just cause for dismissal is largely a matter of discretion for the superior officer, provided that such cause is personal to the employee and renders her unfit for the position occupied. *Pittsburgh Civil Serv. Comm'n v. Beaver*, 315 A.2d 672, 674 (Pa. Cmwlth. 1974).

[2] The original record does not contain Henderson's written response to the suspension notice.

## A. The Department's Evidence

Evidence at the hearing revealed that the Department received an inquiry from DHS regarding two letters Henderson sent to DHS stating her employment with the Department had terminated. R.R. at 26a, 29a. The first letter, dated January 18, 2017, and purportedly signed by Henderson's supervisor, Rhonda Nesbit (Nesbit), stated Henderson's temporary position with the Department had terminated effective January 20, 2017, and Henderson received pay in the amount of $8.84 per hour. *Id.* at 29a, 74a-75a. The second letter, dated December 29, 2017 and ostensibly signed by Deb Lestitian (Lestitian), the Department's Director, advised that Henderson's position with the Department had terminated effective November 20, 2017.[3] *Id.* at 29a, 47a.

On those dates, however, Henderson was still employed by the Department, and her position was full-time, not temporary. *Id.* at 26a, 30a. Furthermore, the rate of pay set forth in the January 18, 2017 letter – $8.84 per hour – conflicted with an earnings report in Henderson's personnel file, which indicated she earned $16.75 per hour when first hired and received an hourly rate of $17.09 at the time of her termination. *Id.* at 75a, 77a.

The letters were neither written nor signed by Nesbit and Lestitian. *Id.* at 29a. Bruni testified that Nesbit denied signing the January 18, 2017 letter purportedly terminating Henderson effective January 20, 2017. *Id.* at 48a. Nesbit provided Bruni a sample of her signature, which did not match the signature on the January 18, 2017 letter. *Id.* at 75a. Bruni contacted the individuals and entities allegedly copied on the January 18, 2017 letter and none had received a copy or had seen the letter previously. *Id.* at 48a-49a. From this, Bruni deduced that the only individual who

_____

[3] Neither letter allegedly mailed to DHS appears in the original record filed with this Court.

received a copy was Henderson, whose name and address appeared at the top of the letter. *Id.* at 49a, 76a.

Bruni further interviewed the Department staff working on December 29, 2017, the day Lestitian allegedly signed and faxed the letter acknowledging Henderson's termination effective November 20, 2017. *Id.* at 51a. None recalled having seen or having faxed the letter to DHS. *Id.* Upon examination, the body of the letter appeared to have a different font than the signature block at the bottom. *Id.* at 77a.

Henderson confirmed during an interview with Bruni that she received public assistance benefits and the amount of those benefits was determined by Henderson's income, if any, and the number of individuals in her household. *Id.* at 78a-79a. Henderson denied having seen the January 18, 2017 and December 29, 2017 letters. *Id.* at 78a.

Bruni ultimately concluded that Henderson was the only person to possess the January 18, 2017 and December 29, 2017 termination letters sent to DHS, that Henderson's denial of any knowledge of the letters was not credible, and that she had a financial incentive to falsify her employment status with the Department. *Id.* at 79a.

As a result of the investigation, Henderson's employment was suspended for five days. *Id.* at 73a. However, the OMI report also detailed further inconsistencies with the documentation sent to DHS. *Id.* at 35a. Copies of these documents were not contained in Henderson's personnel file, which was standard practice for the Department when verifying an individual's employment status. *Id.* Further, the letter allegedly signed by Lestitian, while faxed from an office fax number, was sent on a day Lestitian was not in the office. *Id.* at 36a. Manuel reviewed the OMI report

4

with Mayor Peduto, who then signed a letter terminating Henderson's employment.[4] *Id.* at 37a.

Manuel testified that, following Henderson's termination, Nesbit packed up Henderson's work space and discovered a letter from Henderson directed to DHS in which Henderson stated she was no longer employed by the Department. *Id.* at 38a. The letter asserted Henderson was attending school on a full-time basis and had no income. *Id.* Manuel confirmed this letter was dated for a period during which Henderson still worked full time for the Department. *Id.*

Neither Nesbit nor Lestitian testified, and the only documentary evidence introduced by the City consisted of the February 22, 2018 letter from Manuel suspending Henderson without pay, the OMI report, and Mayor Peduto's March 2, 2018 letter terminating Henderson. R.R. at 73a-81a.

### B. Henderson's Evidence

Henderson denied signing the January 18, 2017 and December 29, 2017 letters and maintained someone else submitted them. *Id.* at 58a, 61a. Henderson alleged issues with her employment began when she notified Nesbit of her pregnancy. *Id.* at 60a. Henderson testified her personnel file contained disciplinary action reports for incidents that took place on days she was out of the office. *Id.* at 61a-62a. When Henderson reported an issue concerning Nesbit, she was "yelled at for complaining about it." *Id.* at 63a.

Henderson acknowledged she received public assistance during the period she worked for the Department. *Id.* at 64a. Henderson testified DHS contacted the Department directly for the proof of her income. *Id.* She asserted the Department

---

[4] Manuel testified that, as Acting Director, she lacked authority to terminate Henderson. R.R. at 28a.

knew she received such benefits because the City provided healthcare benefits to her at a reduced rate. *Id.* at 65a.

## C. The Commission's Adjudication

The Commission issued its adjudication on April 6, 2018. The Commission made the following enumerated findings of fact:

1. [Henderson] was employed as a Human Resources Specialist for the [Department] for one (1) year and two (2) months;

2. On February 22, 2018[,] [Henderson] was given a Suspension Pending Termination notice from [the Department's] Acting Director, [Manuel];

3. [Henderson] submitted a written response to the Suspension Pending Termination notice;

4. On March 2, 2018[,] Acting Director [Manuel] issued a termination notice to [Henderson];

5. On March 8, 2018[,] [Henderson] submitted a written notice of appeal and a hearing was scheduled for Thursday, March 29, 2018.

*Id.* at 12a.

Additionally, the Commission "[found] that [Henderson] has provided sufficient testimony and evidence to overturn the decision of the [Department]." *Id.* The Commission directed the Department to reinstate Henderson to her position with the Department with back pay and no loss of seniority. *Id.* at 12a-13a.

## D. The Trial Court's Decision

The City appealed to the trial court, which affirmed the Commission. In its opinion, the trial court acknowledged that the Commission was "not specific in the interpretation of the facts." *Id.* at 99a. Nevertheless, the trial court opined that the

6

Commission's decision to reinstate Henderson was "supported by the findings of fact in the record." *Id.* In reaching this conclusion, the trial court relied on Henderson's testimony that she was forthcoming with the Department about the public assistance she received, her current pregnancy, and the "documentation signed by her superiors."[5] *Id.* Henderson testified that she was unfamiliar with the signatures on the January 18, 2017 and December 29, 2017 letters and she did not fabricate those letters. *Id.* Rather, they were sent directly by the Department to DHS. *Id.* Henderson's credibility "was not challenged by the Commission," and her testimony was deemed sufficient to overturn the Department's decision to terminate her employment. *Id.* The credibility and weight to be given Henderson's testimony was within the provision of the Commission, and, while the evidence could support findings other than those made by the Commission, the only issue before the trial court was whether the findings made by the Commission were supported by substantial evidence. *Id.* at 99a-100a. The trial court then "[found] that [Henderson's] testimony was found credible by the Commission and their [sic] conclusions were supported by substantial evidence." *Id.* at 100a. This appeal followed.

Subsequent to the filing of its appeal with this Court, the City filed a motion requesting this Court take judicial notice of online records maintained by the Administrative Office of Pennsylvania Courts (AOPC) that indicated criminal charges were filed against Henderson in relation to her receipt of public assistance.[6]

---

[5] It is not clear to which documentation the trial court refers.

[6] Henderson was charged with violating Section 481 of the Human Services Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. § 481. Section 481 prohibits the use of fraudulent means to obtain public assistance.

This Court granted the City's motion, stating it would take judicial notice of the requested court records. This Court did not, however, address the appropriateness of considering the records as part of the underlying appeal, as they were not part of the original record and were not considered below. The parties were advised to address the issue in their principal briefs on the merits.

## II. Issues

On appeal,[7] the City argues that the Commission capriciously disregarded the evidence presented and failed to elucidate its reason for crediting Henderson's testimony in light of the City's contrary evidence. Consequently, the Commission's findings of fact are not supported by substantial evidence. The City further argues it had just cause to terminate Henderson where the City's evidence supported a conclusion that Henderson submitted falsified documents to qualify for public assistance and where the nature of Henderson's position granted her access to sensitive employee information such as bank account and social security numbers.

## III.   Analysis

## A. Capricious Disregard

The City first argues that the Commission capriciously disregarded evidence where it made only cursory findings of fact and conclusions of law. The City asserts that the Commission made no findings in regards to the Department's internal investigation and reasons for terminating Henderson and the Commission failed to explain why the Department's evidence was disregarded.

---

[7] Our review of the Commission's decision is limited to determining whether constitutional rights have been violated, whether errors of law have been committed, or whether its findings are supported by substantial evidence. *Moore v. State Civil Serv. Comm'n (Dep't of Corr.)*, 922 A.3d 80, 84 n.3 (Pa. Cmwlth. 2007).

8

Henderson argues the City's evidence was not competent to support a finding in its favor, as its witnesses had no personal knowledge of the relevant events. Henderson notes that neither Nesbit nor Lestitian testified and the City relied entirely on Bruni's second-hand representation of the facts relayed to her by the witnesses she interviewed during the course of her investigation. Henderson argues that such evidence constituted uncorroborated hearsay, which was incompetent to support any findings that she was terminated for just cause.

Section 555 of the Local Agency Law requires the Commission to include in its adjudication "findings and the reasons for the adjudication[.]" 2 Pa.C.S. § 555. "A capricious disregard of evidence occurs 'when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result.'" *Kenney v. Bureau of Prof'l and Occupational Affairs, State Bd. of Pharmacy*, 203 A.3d 421, 430 (Pa. Cmwlth. 2019) (internal citations omitted). Where strong critical evidence contradicts contrary evidence, the adjudicator must provide an explanation as to how it made its determination. *Id.* In other words, the ultimate question is whether the adjudicator failed to properly explain overwhelming critical evidence. *Id.*

The Commission's enumerated findings of fact concern matters for which there exists no dispute. Henderson worked for the Department for approximately 14 months, at which point she received a notice suspending her employment. Henderson submitted a written response to the suspension notice, after which her employment was terminated by letter dated March 8, 2018. Henderson appealed her termination and a hearing was scheduled for March 29, 2018.

The Commission concludes its review of the record by stating "we find that [Henderson] provided sufficient testimony and evidence to overturn the decision of

9

the City," and directing the City to reinstate Henderson to her former position with back pay. R.R. at 12a. Given the Commission failed to summarize the vast majority of evidence presented, we are unable to discern what "sufficient testimony and evidence" led the Commission to conclude reinstatement was warranted. Indeed, the Commission failed to even cursorily address the evidence presented at the hearing. Henderson's testimony clearly conflicted with the City's, yet the Commission made no attempt to resolve these conflicts through credibility findings.

With regard to the trial court's review, argument was limited to the briefs of the parties and the "record that has been filed in the Department of Court Records. **The hearing will not be a *de novo* hearing.**" R.R. at 87a (emphasis added). Consequently, the trial court took no additional evidence and was bound by the following standard of review as set forth in Section 754(b) of the Local Agency Law:

> [T]he [trial] court shall affirm the adjudication unless it shall find that the adjudication is in violation of the rights of the appellant, or is not in accordance with law, or that the [procedural rules of the Commission] have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

2 Pa.C.S. § 754(b).

In affirming the Commission, the trial court acknowledged that the Commission's decision "is not specific in the interpretation of the facts." R.R. at 99a. The trial court then attempted to fill in the blanks left by the Commission by speculating as to the evidence which led to the Commission's ultimate conclusion that Henderson should be reinstated. That undertaking necessarily involved fact-finding, a task falling outside the trial court's appellate jurisdiction, as none of the testimony upon which the trial court relied was cited by the Commission in its

10

adjudication. The trial court's exercise in fact-finding was particularly evident in its determination that Henderson's testimony "was found credible by the Commission and their [sic] conclusions were supported by substantial evidence." *Id.* at 100a.

The trial court's assertion that the Commission gave "credibility and weight" to Henderson's testimony is unsubstantiated, as the Commission failed utterly to do so in its decision. *Id.* at 99a. Moreover, the fact that Henderson's credibility "was not challenged by the Commission" does not by itself signify a finding of credibility by the Commission.

Section 555 of the Local Agency Law requires the Commission to include in its adjudication "findings **and the reasons for the adjudication**[.]" 2 Pa.C.S. § 555 (emphasis added). Beyond a bare statement that Henderson "provided sufficient testimony and evidence," however, R.R. at 12a, the Commission's opinion is bereft of reasons supporting its conclusion that Henderson must be reinstated.

The Commission's deficient adjudication is similar to that presented in *Turner v. Civil Service Commission*, 462 A.2d 306 (Pa. Cmwlth. 1983). *Turner* concerned the appeal of a police officer discharged for conduct unbecoming an officer. At a hearing before the Civil Service Commission of the City of Philadelphia (Philadelphia Commission), testimony was elicited that the officer was observed drinking in a bar while in uniform. The results of a breathalyzer test indicated a blood alcohol level of 0.22%. A subsequent examination by the police surgeon confirmed the officer was under the influence of alcohol. The Philadelphia Commission upheld the officer's dismissal. His appeal was dismissed by the court of common pleas. This Court vacated the order of the court of common pleas and remanded the matter to the Philadelphia Commission. We noted that the Philadelphia Commission thoroughly recited the testimony of the parties and

11

reviewed the applicable law. Following that recitation, however, the Philadelphia Commission merely concluded the officer's dismissal was for good cause. The Philadelphia Commission neglected to make any findings regarding whose testimony was credible, which allegations were substantiated by the evidence, or what facts were found to constitute just cause. Such a decision did not comport with the requirements of Section 555 of the Local Agency Law that such adjudications contain findings and the reasons for the adjudication.

Presently, in light of the Commission's ultimate disposition in this matter, the trial court evidently assumed that the Commission found Henderson's testimony more credible than that of the City's witnesses. Absent from the Commission's adjudication, however, is any indication why the Commission deemed Henderson more credible or why the City's evidence was somehow wanting or lacking in credibility. The Commission's failure to comment on, or even acknowledge the existence of, the City's evidence constitutes capricious disregard of evidence. Consequently, we are unable to affirm the trial court and are constrained to remand this matter so the Commission may issue an adjudication that comports with Section 555 of the Local Agency Law.

**B. Hearsay**

While we have concluded that the Commission's adjudication was fatally deficient, we are compelled to address Henderson's hearsay argument. Hearsay evidence to which no objection has been lodged must still be corroborated by competent evidence. *Pa. Game Comm'n v. State Civil Serv. Comm'n (Wheeland)*, 219 A.3d 1257, 1266 (Pa. Cmwlth. 2019) (quoting *Walker v. Unemployment Comp. Bd. of Review*, 367 A.2d 366 (Pa. Cmwlth. 1976)). A finding based solely on hearsay, even where admitted without objection, cannot stand. *Walker*, 367 A.2d at

Henderson concedes she did not object to the City's evidence on hearsay grounds. She maintains, however, that the City's evidence was not otherwise corroborated and it was thus incompetent to support any findings in the City's favor. We agree, to a point.

Bruni's testimony, and the OMI report that formed the basis for Henderson's termination, was primarily based on statements made to Bruni by the witnesses she interviewed, none of whom testified before the Commission. Nesbit did not testify to confirm or deny that the signature on the January 18, 2017 letter was hers, nor did she testify as to the contents of the letter she discovered while packing up Henderson's work station. Indeed, none of the letters allegedly submitted by Henderson to DHS were introduced at the March 29, 2018 hearing. Similarly, Manuel's testimony largely consisted of conversations she had with Nesbit and Lestitian and Manuel's recollection of the letters that allegedly bore their signatures. Henderson's concession that she did not object to the City's evidence as hearsay is of no moment because the bulk of that evidence is otherwise uncorroborated by the record.[8]

Manuel and Bruni did testify to matters within their personal knowledge, however, and their testimony was subject to cross-examination by Henderson. Manuel was present, for example, when Bruni interviewed Henderson as part of the OMI investigation, and she had personal knowledge of Henderson's work duties and employment status throughout the relevant time period. As the manager of OMI, Bruni clearly had knowledge of the investigation process that informed a portion of her testimony. Because we are unable to dismiss the entirety of evidence presented

---

[8] As we have determined a remand is required, we need not address the City's remaining arguments.

by the City as uncorroborated hearsay, affirmance of the Commission's decision on hearsay grounds is not appropriate.

## C. Conclusion

The Commission failed to address in its adjudication the evidence presented by the City and further neglected to resolve the apparent conflicts between that evidence and Henderson's contrary testimony. These failures result in an adjudication that precludes effective appellate review. Accordingly, we vacate the order of the trial court and remand this matter to the trial court for further remand to the Commission. Following remand, the Commission is directed to issue a new adjudication which sets forth findings of fact, including credibility determinations, and the reasons for its disposition, in accordance with the requirements of Section 555 of the Local Agency Law.

_____
ELLEN CEISLER, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,                          :
                    Appellant                :
                                             :
        v.                                   :   No. 1 C.D. 2019
                                             :
Jaz'Mine Henderson                           :


# **O R D E R**


AND NOW, this 20th day of April, 2020, the November 27, 2018 order of the Court of Common Pleas of Allegheny County (trial court) is hereby vacated and this matter is remanded to the trial court for further remand to the Civil Service Commission of the City of Pittsburgh (Commission). Following remand, the Commission shall issue a new adjudication which sets forth findings of fact, including credibility determinations, and the reasons for its disposition, in accordance with the requirements of Section 555 of the Local Agency Law, 2 Pa.C.S. § 555. Jurisdiction is relinquished.


_____
ELLEN CEISLER, Judge