618 A.2d 1244

**PENN TOWNSHIP, Appellant,**

v.

**Richard WATTS, trading and doing business as Ric's Marine, Appellee.**

Commonwealth Court of Pennsylvania.

Argued April 9, 1992.

Decided Dec. 23, 1992.

360

Raymond C. Schlegel, for appellant.

James M. Bucci, for appellee.

Before COLINS and FRIEDMAN, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

This is an appeal by the Township of Penn (Township) from an order of the Court of Common Pleas of Berks County. The order modified a paragraph of a 1986 consent decree [1] between the Township and Richard Watts, trading and doing business as Ric's Marine, (Watts), determined that Watts had complied with portions of earlier orders, determined that Watts must pay $11,338.00 in engineering and legal fees incurred by the Township in seeking enforcement and compliance with court orders and vacated that portion of a 1989 order which had required a $100,000.00 performance bond.

1.  In 1986 the trial court issued an order incorporating the agreement of the parties contained in a colloquy on the record. This order has variously been described as a Colloquy–Order, a Colloquy Order, a consent decree and the First Consent Decree. Subsequent orders were simply titled "Order." In this opinion, the terms colloquy and order, consent decree and consent order are used interchangeably.

Watts is the owner of property in Penn Township. Part of the premises is located in a district zoned commercial and part in a low density residential district. Watts commenced a business selling boats on the commercially zoned part of the property without obtaining the necessary certificate of use and occupancy and also began to use the residentially zoned portion of the property to store boats, motors, trailers and other materials including rubbish and debris in violation of the zoning requirements in the residential district. In May of 1986 the Township instituted an equity action seeking injunctive relief to bar Watts from, among other things, using the commercial portion of the property as a business until a certificate of use and occupancy was issued; using the residentially zoned portion of the property for storage and placement of debris; and dumping or burying rubbish, debris, refuse or other materials on the property.

On November 12, 1986, the Township and Watts agreed to the entry of an order which, among other things, enjoined Watts from dumping all but Class I [2] fill on property owned by him and enjoined him from storing articles or goods, including boats and trailers, and from conducting commercial activities on the residentially zoned portions of his property.[3] The order also provided for grading, seeding and landscaping of the premises in accordance with a prescribed plan and set a timetable for removal of articles and goods stored on the premises, for completion of the grading, seeding and landscaping and for completion of the interior of the building on the premises.

Additional orders followed. On December 17, 1987, a new order was agreed to and entered finding Watts in contempt of court for failure to comply with portions of the 1986 order and providing for sanctions, consisting of a fine of $250.00 per day retroactive to the December 17, 1987 date if Watts did not

2. At the time of the order, Class I fill was defined by the Department of Environmental Resources as: "Waste materials limited to soil, rock, stone, gravel, brick, block and concrete." (Brief of Appellant at 10, citing 75 Pa.Code § 75.33.)

3. The order also restricted outside storage on the commercially zoned portions of the property.

comply with conditions under a revised timetable. This order also provided for the payment of engineering fees, water testing fees and legal fees by Watts. The amounts due were to be determined by the parties or, if they could not agree, by the court.[4]

In the final consent order, dated October 31, 1989, the parties agreed to a proposed order by which Watts was to *remove* "all materials other than Class I and Class II materials,[5] unless any of such Class II materials are hazardous or could otherwise cause contamination," (S.R.R. at 40b) from a portion of the property by May 1, 1990. The order also prohibited open burning on the site and provided for the removal of articles and goods, such as boats and trailers, from the residential portion of the property within 30 days, for the payment of specified fees and costs by December 31, 1989,[6] for inspections of the property and for Watts to furnish a performance bond in the amount of $100,000.00.

In December of 1989, more than 30 days after the October 31, 1989 consent order, the Township filed a Petition for a Rule to Show Cause why Watts should not be held in contempt of court for failure to comply with the November 1986

4. The pertinent portions of the agreement provide:

2. That the engineering fees incurred by the Township after September 30, 1987, relating to compliance with the order of November 12, 1986, be paid to the Township by January 31, 1988, in such amount as agreed by counsel, otherwise to be determined by the Court upon application.

3. That the water testing fees incurred by the Township with respect to defendant's property be paid to the Township by January 31, 1988, in such amount as agreed by the parties, otherwise to be determined by the Court.

4. That the counsel fees incurred by the Township with respect to enforcement of compliance with the order of November 12, 1986, be paid by defendant to the Township by March 31, 1988, in such amount as agreed to by the parties, otherwise to be determined by the Court.

(S.R.R. at 37b.)

5. This provision refers only to *removal* of materials and does not change the 1986 prohibition against *dumping* of "other than Class I materials."

6. This amounted to $4,886.90 for legal fees and costs and a balance due on engineering fees and costs through September 30, 1989 in an amount of $713.32.

and October 1989 court orders. This petition alleged that Watts had failed to remove various items from the property within 30 days of the October order and that Watts continued to allow dumping of prohibited materials on his property. The Rule to Show Cause was issued on January 11, 1990, and Watts responded with an answer and new matter averring that he had complied with all terms and conditions of the October 31, 1989 order and asking the court to vacate all prior orders. On March 25, 1991 the trial court issued an order modifying a portion of paragraph 1 of the first order (November 12, 1986) to permit the dumping of grubbings, assessing attorney and engineering fees against Watts (pursuant to the December 17, 1987 order) in an amount of $11,338.00 and vacating the requirement for a performance bond (October 31, 1989 order).

The Township argues that the trial court erred in modifying paragraph 1 of the 1986 order and in determining that the dumping was in compliance with the consent orders, that the trial court erred in its determination of legal and engineering fees and that the trial court erred in vacating the provision of the October 1989 order which required Watts to post a $100,000.00 performance bond.

Watts argues that the Township waived the argument that the trial court lacked authority to modify the consent decree by failing to raise the issue in the trial court and preserve it for review. We disagree.[7] Watts also argues that the trial court merely interpreted the terms of the order in a manner consistent with the rules of construction and that the trial court correctly determined that Watts was in substantial compliance with the court order and that the performance

7. In its reply brief, the Township responded that the issue was preserved for appellate review and referred to the *Concise Statement Of Matters Complained Of and Intended To Be Argued On Appeal* in which the Township stated:

The Court further erred in providing in paragraph 3 of its Order of March 25, 1991 that paragraph 1 of the Order of November 12, 1986 should be modified....

(Reply Brief of Appellant at 3.) See also, paragraph 14(d) of the Plaintiff's Petition for Reconsideration of the Order of March 25, 1991. (S.R.R. at 70b.)

bond was unnecessary and, therefore, correctly vacated the provision for a $100,000.00 performance bond.

■ Our scope of review in this equity matter is limited to determining whether the lower court committed an error of law or abused its discretion. *Lower Frederick Township v. Clemmer,* 518 Pa. 313, 543 A.2d 502 (1988).

■ The rule in Pennsylvania regarding modification of a consent decree is that "where a decree in equity is entered by consent of the parties it is binding upon the parties until *they* choose to amend it." *Dravosburg Housing Association v. Dravosburg Borough,* 71 Pa.Commonwealth Ct. 144, 151, 454 A.2d 1158, 1162 (1983) (emphasis in original). This differs from the rule in federal courts which permits modification of an equity decree entered by consent even if its terms do not provide for modification. *Id.* In Pennsylvania, a consent decree in an equity action is not considered a legal determination by the courts but is an agreement between the parties. Essentially, it is a contract with the same binding effect as a final decree rendered after a full hearing on the merits. 14 *Standard Pennsylvania Practice* § 79.158. *See also Commonwealth v. U.S. Steel,* 15 Pa.Commonwealth Ct. 184, 325 A.2d 324 (1974). A court may construe or interpret a consent decree as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there has been fraud, accident or mistake. *Universal Builders Supply, Inc. v. Shaler Highlands Corp.,* 405 Pa. 259, 265, 175 A.2d 58, 61 (1961). The line between clarification and modification of a consent decree is often difficult to ascertain. In *Watson v. City of Sharon,* 45 Pa.Commonwealth Ct. 285, 406 A.2d 824 (1979), we found that the clarification went to the heart of the original dispute and concluded that the clarified language was really a modification which required agreement of the parties before it could be binding.

■ Paragraph 3 of the March 1991 order, which states that paragraph 1 of the 1986 order "shall be *modified* [to enjoin dumping] . . . other than in accordance with the *current* Rules and Regulations of the Pennsylvania Department of Environmental Resources adopted pursuant to the Solid

Waste Management Act...." (emphases added), (Brief of Appellant at 2-3), belies Watts' argument that the trial court merely interpreted paragraph 1 of the November 1986 order. Thus, we need not determine whether the fine line between clarification and modification has been crossed.

All of the trial court's subsequent determinations flowed from its modification of paragraph 1 of the 1986 consent decree. The court found that the dumping of and failure to remove grubbings was not a violation of the previous orders.[8] It then determined the fees due based upon its finding that the municipality "was wrong to seek reimbursement for the costs apportioned to enforcing [the removal of grubbings]." It also determined that, aside from payment of the disputed fees, Watts had substantially complied with the court orders and, therefore, vacated the requirement for a $100,000.00 performance bond. (Trial Court Op. at 2-3.)

The 1987 agreement contemplated court determination of engineering, water testing and counsel fees due the municipality if the parties could not agree, but this determination had to be based upon the meaning of the agreements, without modification. Similarly, the trial court did not have authority to vacate the paragraph requiring Watts to furnish a performance bond. Pursuant to paragraph 7 of the 1989 order, the performance bond was to remain in effect until Watts had performed all of the terms of the 1989 order, including actual payment of all fees due to the municipality. By vacating the requirement for the performance bond, the trial court again modified a portion of one of the consent decrees.

The trial court did not have the authority to modify the consent decree but was required to give effect to the intentions of the parties and enforce the orders as contemplated by the agreements, unless modification was necessitated by fraud, accident or mistake. *Lower Frederick Township.* Neither the order nor the opinion provides any basis for concluding

8. According to the trial court opinion, the critical dispute in this case was whether "the dumping of grubbings (tree roots, vegetation and other such vegetative waste)" violated the prior orders and whether Watts was responsible for removing grubbings from the property. (Trial Court Op. at 1-2.)

that the exceptions to the rule against modification were applied in this case.[9]

We conclude that the trial court committed an error of law in modifying the consent decree, and we remand for interpretation of the decrees without modification, for reconsideration of attorneys and engineering fees and for a determination of whether the October 1989 order has been fully performed. Accordingly, we vacate the order of the Court of Common Pleas of Berks County and remand for proceedings not inconsistent with this opinion.

## ORDER

AND NOW, this 23rd day of December, 1992, the order of the Court of Common Pleas of Berks County, dated March 25, 1991, is vacated and remanded for proceedings not inconsistent with this opinion.

Jurisdiction relinquished.

---

**9.** For a discussion of when a modification might be sought, see *U.S. Steel*, 15 Pa.Commonwealth Ct. at 191–94, 325 A.2d at 328–30.