### CECIL TOWNSHIP

v.

### Joseph KLEMENTS and Janice Klements, his wife, Appellants.

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 2003.

Decided April 21, 2003.

Peter M. Suwak, Washington, for appellant.

Mark F. Geary, Washington, for appellee.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Joseph Klements and Janice Klements, his wife, (the "Klementses") appeal from a final order of the Court of Common Pleas of Washington County (trial court). We affirm in part and reverse in part.

In January 1997, Cecil Township (Township) filed an action in equity against the Klementses to compel compliance with the Township's Ordinance. The complaint alleged that the Klementses were maintaining an unlawful junkyard with approximately forty vehicles in and around their property. On September 24, 1997, the parties entered into a Consent Order. The Consent Order required that (1) all vehicles without current inspection and registration be removed within 30 days of the order and any vehicle not so removed be removed by the Township with the costs born by the Klementses; (2) all vehicles that have a current inspection and registration be stored behind the proposed fence line; (3) a six foot wooden fence be erected; (4) no vehicles without a valid work order be permitted on the property; (5) in support of a valid work order, a non-inspected/registered vehicle may be stored behind the fence not to exceed 90 days; and (6) all parts, debris, motorcycles, and/or vehicle-related items be stored behind the building.

On December 15, 1997, the Township filed the first rule to show cause why the Klementses should not be held in contempt. Following a hearing, the trial court gave the Klementses 45 days to erect a fence and ordered that the Consent Order is to be complied with, to the extent that it can be, until the fence is erected by order dated January 15, 1998.

On May 4, 1998, the Township filed a second petition to show cause why the Klementses should not be held in contempt. Following a hearing, on May 27, 1998, the trial court found that the Klementses were in contempt of the Consent Order and ordered that $3,500 be paid to the Township. The order directed that if the Klementses failed to comply with the Consent Order by a certain date, the $3,500 would be forfeited to the Township. If the Klementses complied with the Consent Order, the Township was to return the sum of $3,500, without interest, less reasonable counsel fees, to the Klementses in monthly installments of $500, so long as compliance is maintained.

On November 21, 2001, a third petition to show cause was filed. Following a hearing on the same, the trial court rendered the following findings of fact. The evidence presented by the Township as well as Joseph Klements' own testimony proved that there are continuous violations of the Consent Order. The Klementses have continually and, at times, willfully ignored the Consent Order. The Klementses have continually made excuses as to why the

work-order vehicles were not behind the fence line, the unregistered/unlicensed vehicles were not removed, and the debris continued to be stored in front of the garage. As of the hearing date, junk/debris is still being stored in front of the building; unregistered/unlicensed vehicles remain on the property; work-order vehicles are not behind the fence line.

Since the time of the initial court order, there have been at least four or five occasions where vehicles have been involuntarily removed from the premises by the Cecil Township Police, involving at least six to ten vehicles during each seizure. Paragraph 5 of the Consent Order contemplates that there will be inspections to verify work orders before removal. There have been virtually no inspections by the police prior to removal. The police have seized the vehicles and have forced the Klementses to retrieve the vehicles by producing the work order. The removals have occurred at midnight and/or early Sunday morning. This in contrary to paragraph 5, which contemplates contact during reasonable work hours.

In the normal course of business operations, in support of the right guaranteed by paragraph 1 of the Consent Order, numerous vehicles have accumulated at the Klementses' property, even though the work has been completed for the customer. These are appropriately road-worthy and not junk. However, for various reasons, including late payment of fee, the customers have not regained possession of their vehicles.

The trial court further found that over the years, there have been substantial disagreements between the parties concerning the interpretation of the Consent Order. The third petition to show cause, while brought by the Township, was agreed upon by both parties in order to bring the issues before the court to clarify the earlier orders and establish an unambiguous procedure.

■ By order dated March 28, 2002, the trial court ordered, *inter alia,* that the $3,500 deposit be forfeited to the Township and that all unregistered/unlicensed vehicles are to be removed from the property within seven (7) days, and from one week hence, there are to be *no* unregistered/unlicensed vehicles placed/parked on the property. The trial court ordered that, in all other respects, the Consent Order and its amendments shall remain in full force and effect. From this decision, the Klementses have filed the present appeal.[1]

The Klementses have raised the following issues for our review:

1.  Whether the trial court, without authority, amended the obligations of the party beyond the scope of what had previously been agreed to?

2.  Whether the Township met its burden of proof to demonstrate a willful violation of a court order so as to support the contempt charge?

The Klementses contend that the trial court lacked authority to modify the parties' Consent Order. We agree.

■ In Pennsylvania, a consent decree in an equity action is not treated as a legal determination by the courts, but rather, as an agreement between parties. *Penn Township v. Watts,* 152 Pa.Cmwlth. 359, 618 A.2d 1244 (1992). In other words, a consent decree is a contract with same binding effect as a final decree rendered after a full hearing on the merits. *Id.* The effect of such a decree was clearly stated

---

1.  This Court's scope of review in an equity matter is limited to determining whether the trial court committed error of law or abused its discretion. *Penn Township v. Watts,* 152 Pa.Cmwlth. 359, 618 A.2d 1244 (1992).

in *Commonwealth v. Rozman,* 10 Pa. Cmwlth. 133, 309 A.2d 197 (1973):

> A consent decree is not a legal determination by the court of the matters in controversy but is merely an agreement between the parties. It is in essence a contract binding the parties thereto. As a contract, such a decree requires a mutual understanding of and concerted action by the parties.... A court has neither the power nor the authority to modify or vary the terms set forth in a consent decree, under such circumstances, in the absence of fraud, accident or mistake.... The consent decree derives its efficacy from the agreement of the parties and the approval of the chancellor. It bound the parties with the same force and effect as if a final decree had been rendered after a full hearing upon the merits.

*Commonwealth v. United States Steel Corporation,* 15 Pa.Cmwlth. 184, 325 A.2d 324, 328 (1974) (citations omitted). *See Cooper–Bessemer Company v. Ambrosia Coal and Construction Company,* 447 Pa. 521, 291 A.2d 99 (1972); *Universal Builders Supply Inc. v. Shaler Highlands Corporation,* 405 Pa. 259, 175 A.2d 58 (1961).

Where a decree in equity is entered by the consent of the parties, it is binding upon the parties until they choose to amend it. *Weeast v. Borough of Wind Gap,* 153 Pa.Cmwlth. 330, 621 A.2d 1074 (1993). While a court may construe or interpret a consent decree as it would a contract, the court has neither the power nor the authority to modify or vary the decree unless there has been fraud, accident or mistake. *Universal Builders Supply; Penn Township.* The line between clarification and modification of a consent decree is often difficult to ascertain. *Penn Township.*

In the case before us, paragraph 5 of the Consent Order clearly permits unlicensed/unregistered vehicles to be stored or maintained on the premises behind the fence line for a period not to exceed 90 days provided the vehicles have a valid work order. The Klementses negotiated this term in the Consent Order in order to allow the retrieval of spare parts for use in Klementses' vehicle reconstruction business. The trial court's order of March 28, 2002 no longer permits any unregistered and unlicensed vehicles to be stored behind the fence line even if they are supported by a work order. Paragraph 2 of the trial court's order provides:

> All unregistered/unlicensed vehicles are to be removed from the property within seven (7) days, and from one week hence, there are to be *no* unregistered/unlicensed vehicles placed/parked on the property on any portion of Morganza Road adjacent to the Defendants' real estate.

This portion of the trial court's order is contrary to the Consent Order. The prohibition of any unregistered and unlicensed vehicles to be stored behind the fence line even if they are supported by a work order is a material change to that which the parties agreed. Although the parties consented to the clarification of the earlier orders, the parties did not agree to the modification of the Consent Order.

As a result, the trial court did not have the authority to modify the consent decree, but was required to give effect to the intentions of the parties and enforce the orders as contemplated by the agreements, unless modification was necessitated by fraud, accident or mistake. Neither the order nor the opinion of the trial court provides any basis for concluding that the exceptions to the rule against modification were applied in this case. We, therefore, conclude that the trial court has erred in modifying this portion of the Consent Order.

Next, the Klementses contend that the Township failed to demonstrate a willful violation of the Consent Order to support the contempt charge because the Consent Order was too vague to be enforced. We disagree.

■ The courts of this Commonwealth possess an inherent power to inflict summary punishment for contempt as a result of disobedience or neglect of the lawful orders or process of the court. *Commonwealth v. Garrison*, 478 Pa. 356, 386 A.2d 971 (1978). "A consent decree, although negotiated by the parties, is a judicial act which is enforceable via the court's contempt power." *Jack Rees Nursing and Rehabilitation Services v. Hersperger*, 410 Pa.Super. 409, 600 A.2d 207, 209 (1991). The purpose of civil contempt is to compel performance of lawful orders, and in some instances, to compensate the complainant for the loss sustained. *Bata v. Central–Penn National Bank of Philadelphia*, 433 Pa. 284, 249 A.2d 767 (1969); *C.R. by Dunn v. The Travelers*, 426 Pa.Super. 92, 626 A.2d 588 (1993). When contempt is civil in nature, as it is in this case, a court must impose conditions on the sentence so as to permit the contemnor to purge himself; he must be allowed to carry the keys to the jail in his pocket. *Kramer v. Kelly*, 265 Pa.Super. 58, 401 A.2d 799, 802 (1979).

■ In a contempt proceeding, the burden is upon the complaining party to prove noncompliance by a preponderance of the evidence. *Barrett v. Barrett*, 470 Pa. 253, 263, 368 A.2d 616, 621 (1977). Inability to comply is an affirmative defense which must be proved by the alleged contemnor. *Id.* There is no contempt if the alleged contemnor, without fault on his part is unable to comply with the order, and has in good faith attempted to comply. *Wetzel v. Suchanek*, 373 Pa.Super. 458, 541 A.2d 761 (1988); *Grubb v. Grubb*, 326 Pa.Super. 218, 473 A.2d 1060 (1984). Where the order is contradictory or the specific terms of the order have not been violated, there can be no contempt. *C.R. by Dunn*. Any ambiguity or omission in the order forming the basis for a civil contempt proceeding must be construed in favor of the defendant. *Id.*

■ In the case before us, the trial court found that there had been substantial disagreements between the parties concerning the interpretation of the Consent Order that necessitated court clarification to establish an unambiguous procedure. Specifically, the trial court found that the Township's midnight removal of vehicles from the property was contrary to the Consent Order which contemplated inspections to verify work orders prior to removal during reasonable work hours. As a result, the trial court clarified this procedure by ordering the following:

> Thereafter and prior to towing and removal of any vehicle, Klements will be served with a written notice of violation. If the violation is not corrected forthwith, the Township may tow the offending vehicle and initiate the contempt process. Fines, as well as costs and fees will be assessed following a hearing on the contempt issue.

Trial Court Opinion, p. 6. While portions of the Consent Order, primarily those relating to procedure for the removal of the vehicles, needed clarification, in all other respects, the 1997 Consent Order and the trial court's subsequent orders to compel compliance with the Consent Order remained in full force and effect.

The Township, the burdened party, presented the testimony of Lieutenant Robert Ware, as well as records and photographs of auto parts, debris and other junk on the property and their state of disrepair, to demonstrate that the Klementses have not

complied with the Consent Order. Joseph Klements admitted that in the last four and a half years, junk has been stored in the front of the building in violation of paragraph 6, which requires such junk to be placed behind the building. Reproduced Record (R.R.) at 156a. Klements also admitted that since entering the Consent Order, vehicles without current inspection and registration have been stored in the front of the building in violation of paragraph 5 the Consent Order. R.R. at 160a, 164a–165a. Klements testified that vehicles without current inspection and registration are supposed to be removed from the premises and admitted that some are located off to the side of the property. R.R. at 171a. Klements testified that vehicles that are inspected and registered are supposed to be behind the fence line and admitted that some are not. R.R. at 172a. Based upon the testimony and evidence presented, substantial evidence supports the trial court's finding that, since the $3,500 fine was levied, the Klementses have continued to violate the terms of the 1997 Consent Order and subsequent orders of the trial court. As the Klementses failed to purge themselves of their contemptuous conduct, we conclude that the trial court did not err in ordering the forfeiture of the $3,500 fine.

Accordingly, the order of the trial court is affirmed in part and reversed in part. The order is affirmed insofar as it orders the forfeiture of the $3,500 fine upon finding that the Klementses have not purged themselves of their contemptuous conduct. The order is reversed insofar as the trial court modified paragraph 5 of the 1997 Consent Order.

### ORDER

AND NOW, this 21st day of April, 2003, the order of the Court of Common Pleas of Washington County is affirmed in part and reversed in part. The order is reversed insofar as the trial court modified paragraph 5 the 1997 Consent Order. The order is affirmed in all other respects, including the forfeiture of the $3,500 fine upon finding that Klementses have not purged themselves of their contemptuous conduct.