J. S31039/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DORIS J. FIGLO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DAVID A. HAWLEY T/D/B/A | : | |
| MUNCY RESTORATION WORKS, | : | No. 1823 MDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered October 18, 2019,
in the Court of Common Pleas of Lycoming County
Civil Division at No. CV-2014-0001033-CV

BEFORE:  BOWES, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED SEPTEMBER 24, 2020**

David A. Hawley, t/d/b/a Muncy Restoration Works ("Hawley"), appeals

from the October 18, 2019 order,[1] entered in the Court of Common Pleas of

Lycoming County, finding him in contempt and ordering him to pay appellee,

Doris J. Figlo ("Figlo"), $20,000 in damages and $4,138.75 in legal fees.  After

careful review, we affirm.

On April 16, 2014, Figlo filed a civil complaint against Hawley related to

Hawley's failure to complete the restoration of Figlo's 1953 Buick Skylark

convertible.  The parties negotiated a settlement which was filed with the trial

court and approved by the court's order of December 15, 2014.  Pursuant to

the stipulation and order, Hawley was to complete the restoration of Figlo's

---

[1] This date reflects the date the order was docketed.

vehicle on or before December 10, 2015. (*See* stipulation, 12/15/19 at ¶ 3.) The vehicle was to be restored in a manner which would render it "road worthy" and capable of being used in parade functions. (*Id.* at ¶ 4.) Road worthy was defined by the parties as "being able to pass Pennsylvania inspection standards." (*Id.*) An extension of time would be permitted if Hawley proved that a necessary part to complete the restoration had been ordered but was unavailable within a reasonable time. (*Id.* at ¶ 7.) Figlo took possession of the vehicle in December of 2017, upon Hawley's failure to complete the work.

On February 1, 2019, Figlo filed a petition requesting the trial court to find Hawley in contempt of the agreed upon stipulation and court order. A bench trial was held on August 22, 2019. The trial court's October 18, 2019 order summarized the facts and the court's findings as follows:

> The [s]tipulation filed on December 11, 2014, provides that "[Hawley] will continue and complete the restoration and assembly of the 1953 Skylark Buick of [Figlo] pursuant to the terms and provisions of this [s]tipulation on or before December 10, 2015." The [s]tipulation then goes on to provide that "the time to complete the restoration of the vehicle may be extended only if [Hawley] can demonstrate that he has ordered a necessary part in a timely fashion and that said part is not available within a reasonable time period." . . . The 1953 Skylark Convertible Buick (hereinafter referred to as the "Buick") was not completed within the deadline imposed by the [s]tipulation, and there has been no showing by [] Hawley as to any part being ordered within a timely fashion.

As to the quality that was required when the Buick was delivered, the [s]tipulation stated that the Buick must be able to pass Pennsylvania inspection standards, be road worthy, and capable of being used in parade functions. Per the numerous exhibits provided by [Figlo], as well as the testimony of one of [Figlo]'s expert witnesses, Ed Stroble, there are still significant areas requiring attention before the Buick could be deemed road worthy.

Testimony offered by Mr. Stroble indicated that it would take an additional $20,000.00 to make the car road worthy and pass inspection pursuant to the terms of the [s]tipulation . . . . Throughout his testimony Mr. Stroble, having possessed a Pennsylvania inspection license for 46 years, made clear what was required for a car to pass a Pennsylvania inspection and addressed the litany of areas where the Buick was deficient. . . . The restoration of the Buick's interior was not completed, the four power windows did not work, the brakes were not functional, the convertible top was not finished, there was a gap at the windshield and an additional party [sic] was missing, the vehicle was leaking fluids, the filler plate at the rear bumper was not installed despite [Hawley]'s assurances that it would be installed for $200.00. One of the white wall tires which [Figlo] had already paid for was scuffed and needed to be replaced, and the windshield wipers did not work. [] Figlo['s son] testified that when the car was picked up on December 20, 2017, the brakes were not fully functioning, nor were the windows or windscreen [sic] wipers. Mr. Stroble testified that any car with these defects could not possibly be expected to pass a Pennsylvania inspection, and was adamant that the inspection sticker already placed on the Buick was not a reflection of its road worthiness. . . .

. . . .

[] Hawley possessed a valid Pennsylvania inspection license but took the Buick to Old Times Garage in Clarkstown, Pennsylvania. An approval sticker was applied despite the aforementioned deficiencies. In

order to make the Buick road worthy and to meet Pennsylvania inspection standards [] Figlo enlisted the services of Stroble & Twigg Auto Restoration, who restored, replaced, and installed numerous components in September, October, and November of 2018 . . . .

[Figlo]'s second expert witness was Theodore Thomas, who has over 40 years of experience in repairing transmissions, and receives annual training on the matter. At [] Hawley's request, Mr. Thomas was to make repairs to the Buick's transmission in July, 2017. Mr. Thomas' testimony made it clear that the transmission was compromised beyond repair because it was filled with sand; Mr. Thomas was of the opinion that the sand was of the same type typically used when sand-blasting a vehicle. [] Hawley testified that he did not sand-blast the Buick, but Mr. Thomas stated that the marks on certain vehicle parts clearly indicated that the Buick had been sand-blasted.[2] [] Hawley admitted that the sand must have accumulated while the transmission had been removed from the Buick. The issues with the Buick's transmission incurred great expense and caused further delays in the requisite restoration work.

. . . . Hawley has yet to complete the restoration of the Buick[.]

Trial court order, 10/18/19 at unnumbered 1-3. The trial court found that Hawley was in contempt of the stipulation and December 15, 2014 order of court.

Hawley filed a timely appeal. On November 10, 2019, the trial court ordered Hawley to file a concise statement of errors complained of on appeal.

---

[2] We note that Hawley testified he did sandblast the firewall and front frame section of the Buick, but that the engine and transmission had been removed prior to the sandblasting. (Notes of testimony, 8/22/19 at 75.)

Hawley timely complied. On December 23, 2019, the trial court entered an order, pursuant to Pa.R.A.P. 1925(a), stating that it was relying on the reasoning set forth in its prior October 18, 2019 opinion[3] and order.

The sole issue Hawley raises on appeal is as follows:

> Did the trial court error [sic] as a matter of law in placing an improper burden of proof and persuasion upon [Hawley], and as such, improperly hold that [Hawley] did not meet the burdens required by law[?]

Hawley's brief at 7.

Initially, we note that Hawley has failed to attach to his brief his Rule 1925(b) statement of errors complained of on appeal. This omission violates Pa.R.A.P. 2111(a)(11) and (d). Further, the summary of argument section of Hawley's brief is blank, violating Pa.R.A.P. 2111(a)(6). (**See** appellant's brief at 12.) However, we conclude that the deficiencies in Hawley's brief do not impede our review. **See Hayward v. Hayward**, 868 A.2d 554, 557 n.2 (Pa.Super. 2005) (holding that, "because [the appellant's] violations of our rules of appellate procedure are not substantial and do not prevent us from reviewing the merits of the issues raised, we will address [the merits of appellant's] claims . . ."). We thus decline to dismiss this appeal.

Our standard of review of contempt orders is as follows:

> [A]n appellate court has the authority to determine whether the findings of the trial court support its legal conclusions, but may only interfere with those conclusions if they are unreasonable in light of the trial

---

[3] The trial court referred to its October 18, 2018 order as both an opinion and order.

court's factual findings. This [c]ourt will not reverse or modify a final decree unless there has been an error of law or an abuse of discretion, or if the findings are not supported by the record, or there has been a capricious disbelief of the credible evidence. Furthermore [e]ach court is the exclusive judge of contempt against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs.

*Sutch v. Roxborough Memorial Hosp*., 142 A.3d 38, 67 (Pa.Super. 2016) (citation and bolding omitted), *appeal denied*, 163 A.3d 399 (Pa. 2016).

Furthermore,

[t]o be punished for contempt, a party must not only have violated a clear order, but that order must have been definite, clear, and specific—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt. To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced.

*Sutch*, 142 A.3d at 67-68 (citation and bolding omitted). In civil contempt proceedings, "the burden of proof rests with the complaining party to demonstrate that the defendant is in noncompliance with a court order." *MacDougall v. MacDougall,* 49 A.3d 890, 892 (Pa.Super. 2012), *appeal*

*denied,* 75 A.3d 1282 (Pa. 2013). To prove civil contempt, the asserting party must show non-compliance with an order of the court by a preponderance of the evidence." ***Diamond v. Diamond***, 792 A.2d 597, 601 (Pa.Super. 2002). However, the "[i]nability to comply is an affirmative defense which must be proved by the alleged contemnor. There is no contempt if the alleged contemnor, without fault on his part is unable to comply with the order, and has in good faith attempted to comply." ***Cecil Township v. Klements***, 821 A.2d 670, 675 (Pa.Super. 2003) (citations omitted).

The elements of civil contempt may be proved by circumstantial evidence and logical inference from other facts. ***See Commonwealth v. Reese***, 156 A.3d 1250, 1258 (Pa.Super. 2017), ***appeal denied***, 173 A.3d 1109 (Pa. 2017). Wrongful intent can be inferred where it is clear from the language of the court's order that the conduct in question violates the court's order and the evidence shows that the contemnor knowingly failed to comply. ***See Commonwealth v. Lambert***, 147 A.3d 1221, 1227 (Pa.Super. 2016). "Additionally, when making a determination regarding whether a defendant acted with wrongful intent, the court should use common sense and consider context, and wrongful intent can be imputed to a defendant by virtue of the substantial certainty that his actions will violate the court order." ***Reese***, 156 A.3d at 1258 (citation omitted).

A review of the record supports the trial court's findings of fact and conclusions of law. In July of 1995, Figlo engaged Hawley to restore the Buick. (Notes of testimony, 8/22/19 at 26.) In 2014, plaintiff filed suit to recover the Buick and monetary damages. The terms of the court-approved settlement were clear and concise. Hawley was to complete the restoration of the Buick on or before December 10, 2015. (*See* stipulation, 12/11/14 at ¶ 3.) The vehicle was to be "road worthy," which the parties "defined as being able to pass Pennsylvania inspection standards." (*Id.* at ¶ 4.) The total amount for labor and parts was not to exceed $26,147. (*Id.* at ¶ 5.) The time for completion could only be extended if [Hawley] could demonstrate that he "ordered a necessary part in a timely fashion and that said part is not available within a reasonable time period." (*Id.* at ¶ 7.)

Here, as found by the trial court, Figlo proved, by a preponderance of the evidence, that Hawley was in contempt. Figlo's son attempted to retrieve the vehicle but Hawley would not release it until he received $ 30,835.75, an amount in excess of that provided for in the stipulation. (*Id.* at ¶ 5.) The vehicle was released on December 20, 2017. (*See* notes of testimony, 8/22/19 at 43.) Prior to the departure of Figlo's son, one of Hawley's employees threw some parts in the trunk. (*Id.* at 47.) Although the Buick had a current Pennsylvania inspection sticker, upon driving away, Figlo's son could not get the vehicle to stop without using both feet on the brakes. (*Id.* at 45, 47, 48.) Among numerous deficiencies, neither the windows nor the

convertible top worked. (***Id.*** at 45.) The sun visor was falling down, the vehicle was leaking fluids, the hood was held down by a wire or coat hanger, and the Buick required that ether be sprayed in order for the vehicle to start. (***Id.*** at 45, 47-49.) The inside door had no panel, there were no backs to the front seats, and the back filler panel was missing. (***Id.*** at 52-54.) The vehicle did not leave Figlo's son's garage until it was towed to Edwin Stroble's garage. (***Id.*** at 48.)

Two experts testified on Figlo's behalf.[4] Theodore Thomas testified that in August 2017, Hawley brought the Buick to him for transmission work. (***Id.*** at 33.) Mr. Thomas worked on the vehicle from August 25, 2017 to October 1, 2017. (***Id.*** at 37.) He found the transmission was full of sandblasting sand and had to be replaced. (***Id.*** at 34-36.) Mr. Thomas further found that the Buick was leaking brake fluid, engine oil, and anti-freeze. (***Id.*** at 39-40.)

Edwin Stroble, Jr., was contacted in June or July of 2018 to restore the vehicle to an operational and drivable condition. (***Id.*** at 5.) He worked on the Buick in September and October of 2018. (***Id.*** at 7.) Stroble testified, in detail, as to all the issues with the Buick and the repairs that he performed. (***Id.*** at 9-15.) In his opinion, the vehicle did not pass inspection when he received it, and the problems with the Buick did not develop while the vehicle was stored in Figlo's son's garage. (***Id.*** 15-20.)

---

[4] Hawley stipulated to their qualifications. (***Id.*** at 5, 33.)

The trial court found that "there are still significant areas requiring attention before the Buick could be deemed road worthy." (Trial court order, 10/16/19 at unnumbered 1.) Further, "it would take an additional $ 20,000.00 to make the car road worthy and pass inspection pursuant to the terms of the [s]tipulation entered in this matter on December 11, 2014." (*Id.* at unnumbered 2.) "[A]ny car with these defects could not possibly be expected to pass a Pennsylvania inspection. . . ." (*Id.*) Finally, despite the fact that Hawley possessed a valid Pennsylvania inspection license, he "took the Buick to Old Times Garage in Clarkstown, Pennsylvania[,]" where "[a]n approval sticker was applied despite the . . . deficiencies." (*Id.* at unnumbered 2-3.) The direct and circumstantial evidence of record supports the trial court's finding of contempt in that Hawley had notice of the stipulation and order, did not comply with it in over two years past the deadline, and acted volitionally and with wrongful intent.

Hawley contends the trial court improperly placed the burden of proof on him to show that he was not in contempt. However, the contemnor has the burden of proving the affirmative defense of inability to comply. *See Cecil Township v. Klements*, *supra*.

The stipulation provided that in order for the completion date to be extended, Hawley had to demonstrate that a part was ordered in a timely manner, and that the part was not available within a reasonable time period. Hawley asserted that he could not comply with the completion date in the

stipulation because he was waiting for chrome parts. (**See** notes of testimony, 8/22/19 at 70-72, 89, 91-92.) The trial court concluded that Hawley did "not ma[k]e a sufficient showing that he ordered a necessary part in a timely manner, nor that said parts were not available within a reasonable time period."[5] (Trial court order, 10/18/19 at unnumbered 3.)

We, therefore, find that the trial court did not abuse its discretion or commit an error of law in determining that Hawley was in contempt of the stipulation and order of court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2020

---

[5] The trial court also found that Figlo did not agree to any extension. (Trial court order, 10/18/19 at unnumbered 3.) We do note that Figlo's son testified that he agreed to an extension from the stipulated completion date because of the chrome. (Notes of testimony, 8/22/19 at 43.) However, he expected the delay in getting the chrome would be 2 weeks to a month, not two years. (**Id.** at 44.)